UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    ROBERTO DEJESUS,

                                Plaintiff,

                            13-CV-8366 (JPO)

           -v-

                            OPINION AND ORDER

    THE CITY OF NEW YORK, and
    CORRECTIONS OFFICERS MICHAEL
    PATRICK McLAUGHLIN, LARON REESE,
    RICHARD TARDI, and EDITH MARGARITO,
                                Defendants.
-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Plaintiff Roberto DeJesus brings this action against Defendants the City of New York ("the City") and Corrections Officers Michael Patrick McLaughlin, Laron Reese, Richard Tardi, and Edith Margarito, alleging that they deprived him of his constitutional rights in violation of 42 U.S.C. § 1983, and that they conspired to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985.[1]  Specifically, DeJesus alleges false arrest, malicious prosecution, violations of the Fourth and Fourteenth Amendments, and conspiracy to commit those violations.  (Dkt. No. 1, Complaint at ¶¶ 38-62.)[2]  Defendants move to dismiss DeJesus's false arrest and malicious prosecution claims under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, their motion is granted in part and denied in part.

---

[1] "DeJesus [] waives the *Monell* claims against New York City insofar as they relate to the Complaint's false arrest and malicious prosecution claims."  (Dkt. No. 17, Plaintiff's Memorandum of Law, at 3.)

[2] Unless otherwise specified, all citations are to the Complaint.

I.      **Background**[3]

DeJesus was in jail on Rikers Island from October 21, 2009, until January 26, 2012, when he was transferred to state custody. (Dkt. No. 15, Declaration of Elissa B. Jacobs, at ¶ 3.) Until July 13, 2011, when he was convicted of robbery and criminal impersonation, DeJesus was at Rikers pending trial. (*Id.*)

On November 23, 2010, two inmates got in a fight in DeJesus's facility. DeJesus was not involved in the fight. When the fight broke out, DeJesus was on the phone. As a result of the fight, Captain J. Williams ordered that the facility be put on lock down. All inmates were ordered to return to their cells immediately. DeJesus promptly hung up the phone and returned to his cell. But when he arrived there, his cell was locked and he could not get in.

While DeJesus was standing in front of his locked cell, McLaughlin, Reese, Tardi, and Margarito descended on him and began to beat him with their batons. The beating was so severe that DeJesus eventually ended up at Elmhurst Hospital, where he was treated "for injuries to his head, neck, back, abdomen, arms and legs." ¶ 26. At some point after he returned from the hospital, DeJesus was placed in "punitive segregation" for 205 days. ¶ 33. As a result of the beating and segregation, DeJesus suffers from "emotional distress, including nightmares, as well as physical pain and suffering." ¶ 31.

DeJesus was indicted in connection with this incident on various criminal charges in 2011. ¶ 28. He was acquitted of all charges in May 2013.

II.     **Discussion**

Defendants move to dismiss DeJesus's false arrest and malicious prosecution claims pursuant to Federal Rule of Civil Procedure 12(b)(6). They argue that because DeJesus was

---

[3] The following facts are taken from the Complaint and assumed to be true for the purposes of this motion.

confined on Rikers Island when the incidents alleged in his complaint occurred, he could not have suffered a deprivation of liberty sufficient to trigger the protections of the Fourth Amendment. They also move to dismiss DeJesus's conspiracy claim under the intra-corporate conspiracy doctrine.

### A. Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B. False Arrest

Plaintiff alleges that, by placing him in punitive segregation, the Defendants committed the tort of false arrest in violation of his Fourth and Fourteenth Amendment rights. In § 1983 actions premised on tort claims, courts are to look to the analogous state torts. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) ("The appropriate starting point of the inquiry is the common law of torts . . . .") (internal quotation marks and citations omitted). To make a claim of false arrest, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United*

*States*, 25 F.3d 98, 102 (2d Cir. 1994). After establishing a common law tort, a § 1983 plaintiff must also show deprivation of a constitutional or statutory right. *E.g.*, *Singer*, 63 F.3d at 116. Defendants do not contest that DeJesus has pleaded facts sufficient to state the first three elements of a common-law false arrest claim. They argue only that they did not violate the Fourth Amendment because DeJesus was already confined.

Several cases cited by Defendants hold that a plaintiff cannot plead a false arrest claim under § 1983 when he is already lawfully detained on an unrelated charge. *E.g.*, *Arnold v. Geary*, 981 F. Supp. 2d 266, 272 (S.D.N.Y. 2013); *Parker v. City of New York*, 05-CV-1803, 2008 WL 110904 (S.D.N.Y. Jan. 7, 2008); *Holmes v. Grant*, 03-CV-3426, 2006 WL 851753 (S.D.N.Y. Mar. 31, 2006). The Fourth Amendment protects us from unreasonable "seizures." U.S. CONST. amend. IV. Thus, these cases hold, because the plaintiff would have been "seiz[ed]" anyway, he cannot state a claim for false arrest when he is already in jail. *Id.*

But DeJesus alleges that he was put in punitive segregation. A period of punitive segregation for a convict implicates constitutionally protected liberty interests whenever it is an "atypical [and] significant deprivation" from the ordinary deprivation that prison entails. *Sandin v. Conner*, 515 U.S. 472, 486 (1995). For a pretrial detainee, punitive segregation (as long as it is punitive) is always a deprivation of liberty sufficient to trigger a constitutionally protected liberty interest. *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001). Contrary to both parties' repeated assertions, convicted and pretrial inmates have Fourth Amendment rights. (*Contra, e.g.*, Dkt. No. 17, Plaintiff's Memorandum of Law, at 3; Dkt. No. 14, Defendants' Memorandum of Law, at 4.)[4] Those rights are implicated whenever the inmate is "seiz[ed]." U.S. CONST.

---

[4] Although DeJesus's counsel incorrectly asserts that "none of [his] claims arise under the Fourth Amendment," the Court does not construe this statement as a withdrawal of his claim. The Court is not bound by a party's incorrect statement of the law.

amend IV.  And the inmate is "seized" when he is segregated from the general population in any "atypical [and] significant" way.  *E.g.*, *Leslie v. Doyle*, 125 F.3d 1132, 1135 (7th Cir. 1997) (Cudahy, J.) ("*Sandin* was a due process case, and here we are considering the Fourth Amendment's bar to unreasonable seizures.  We see no reason, however, why a prisoner's liberty interest under these two provisions of the Constitution would differ.  The district court therefore properly employed *Sandin* to determine whether [the plaintiff] had been 'seized' by being confined in disciplinary segregation.").

DeJesus may assert claims based on violation of the Fourth Amendment only if his time in punitive segregation triggered his due process interests.  *Id.*  Defendants concede that "plaintiff may have a due process claim based on his punitive segregation claim." (Dkt. No. 18, Reply Memorandum of Law, at 2 n.2.)  The question, then, is whether he *does* state a due process claim based on his punitive segregation.  The answer to this question depends, in part, on whether DeJesus was a pretrial detainee or a convicted detainee.  It is unclear whether DeJesus's time in punitive segregation occurred before or after his conviction.[5]  The Court, therefore, analyzes DeJesus's complaint under both standards.

Under Second Circuit law, a pretrial detainee subject to discipline for an infraction is entitled to the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *See Benjamin*, 264 F.3d at 189.  The Defendants have not asserted that DeJesus received any process whatsoever before he was sent to punitive segregation.  Thus, DeJesus's liberty interest was implicated as a pretrial detainee when "[p]rison officials [] impose[d] restraints on the [his] liberty for disciplinary reasons." *Mitchell v. Dep't of Correction*, 05-CV-5792, 2008 WL

---

[5] DeJesus must have spent at least eight days in segregation before his conviction.  He was on Rikers for 197 days after his conviction and he was segregated for 205 consecutive days.

744041, at *12 (S.D.N.Y. Feb. 20, 2008), *report and recommendation adopted as modified*, 05-CV-5792, 2008 WL 744039 (S.D.N.Y. Mar. 19, 2008).

If DeJesus was in punitive segregation after his conviction, a higher standard applies. Whether a period in segregation constitutes a deprivation of "liberty" for a convict under *Sandin* is a context-dependent inquiry. Courts consider both the length of segregation and how harsh it is compared to regular prison. *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999); *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998). The Second Circuit has shied away from strict rules when deciding cases under *Sandin*. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000); *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000). Nonetheless, periods of solitary confinement between 101 and 305 days ordinarily necessitate "development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions. *Colon*, 215 F.3d at 232; *see also Sims*, 230 F.3d at 23. "In the absence of a detailed factual record, [the Second Circuit has] affirmed dismissal of due process claims only in cases where the period of time spent in [punitive segregation] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [segregation]—and there was no indication that the plaintiff endured unusual [] conditions." *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (citing *Hynes v. Squillace*, 143 F.3d 653, 658-59 (2d Cir. 1998) (per curiam) (21 days in keeplock); *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998) (18 days in a segregated housing unit); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

DeJesus alleges that he was segregated for 205 days. ¶ 33. He alleges that he was denied "whatever liberties . . . an inmate in general population would enjoy." ¶ 34. He calls the place in which he was segregated "the box." *Id.* Other cases have described the box at Rikers. Detainees are generally "left in their cells 23 hours a day." *Magee v. Earl*, 91-CV-8180, 1994 WL 693878, at *1 (S.D.N.Y. Dec. 9, 1994). While in the box, DeJesus alleges that he was

"denied . . . food." ¶ 35. DeJesus has pleaded a deprivation of his liberty. Defendants do not challenge that he has pleaded facts sufficient to give rise to the inference that his confinement was "unreasonable" within the meaning of the Fourth Amendment. And he has. He has stated a Fourth Amendment claim and, therefore, a false arrest claim.

One complication remains, though. Both parties assert that where an explicit provision of the Constitution forbids the government from doing something, an aggrieved plaintiff may not turn to the due process clause. *Albright v. Oliver*, 510 U.S. 266, 273-74 (1994). Thus, DeJesus's false arrest claim is in tension with his Fourteenth Amendment claims. But the rule in *Albright* applies only where the plaintiff is seeking to invalidate *one government action* using both an explicit provision of the Constitution and the due process clause. Here, DeJesus has actually stated two claims—however inartfully pleaded. When he was put in the box his Fourth Amendment rights were implicated. And when he was put in the box *without a hearing*, his procedural due process rights were violated, under either *Wolff* or *Sandin*, depending on whether it was pre- or post-conviction.

This is an unusual situation: though the two rights are distinct, they will ultimately boil down to the same question. Whether DeJesus's seizure was "reasonable" in this context depends on whether the hearing indicated that there were reasonable grounds for his detention. And whether his due process rights were violated depends on whether there was a hearing that complied with *Wolff* or *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Nonetheless, DeJesus can bring both claims.

### C.     Malicious Prosecution

Defendants argue that DeJesus's malicious prosecution claim must be dismissed because he cannot show a deprivation of his Fourth Amendment rights. (*See* Dkt. No. 14, Defendants' Memorandum of Law, at 4 (citing *Holmes v. Grant*, 03-CV-3426, 2006 WL 851753 (S.D.N.Y.

Mar. 31, 2006).)  As discussed above, DeJesus has alleged a deprivation of his Fourth Amendment rights.  But his malicious prosecution claim must nonetheless be dismissed because he has not pleaded that the officers lacked probable cause to initiate a prosecution against him.

To state a claim for malicious prosecution, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions," along with a "post-arraignment seizure" that implicates the Fourth Amendment.  *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks and citations omitted).  The problem here is that DeJesus was indicted for his involvement in the incident.  That indictment is sufficient, absent an allegation that the Defendants procured it in bad faith, to establish probable cause for commencing the trial against DeJesus.  *Savino v. City of New York*, 331 F.3d 63, 73 (2d Cir. 2003).  DeJesus does not allege that Defendants procured the indictment in bad faith.  ¶ 59 (pleading only that "Defendants caused a false accusatory instrument to be filed against Plaintiff," not that they did so in bad faith or that they lacked reasonable grounds to believe the instrument's truth).  His malicious prosecution claim is therefore dismissed.

    **D.**    **Conspiracy**

Finally, Defendants move to dismiss DeJesus's conspiracy allegations on the grounds that, because they all work for the same entity, they cannot be held liable due to the intra-corporate conspiracy doctrine.

Because all of the individual Defendants are employees of the New York City Department of Corrections, they cannot "conspire" within the meaning of § 1985 where they act within the scope of their duties as employees.  "[I]t is well settled that there can be no actionable conspiracy under the civil rights laws if the alleged conspirators are employees of a single

organization and their alleged actions were taken in the course of their employment." *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 98-CV-2416, 2002 WL 13222, at *3 (E.D.N.Y. Jan. 3, 2002) (citing *Girard v. 94th Street and Fifth Ave. Corp.*, 530 F.2d 66, 71 (2d Cir. 1976)); *Danielak v. City of New York*, 02–CV–2349, 2005 WL 2347095, *13–*14 (E.D.N.Y. Sept. 26, 2005) ("[T]he intra-corporate conspiracy doctrine bars plaintiff's conspiracy claims because all of the individual defendants were employees of the New York City Police Department, and were acting within the scope of their employment as police officers when they arrested plaintiff."). DeJesus has not alleged that the individual Defendants conspired outside the scope of their employment. Therefore, his conspiracy claim must be dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. DeJesus's malicious prosecution claim and his § 1985 conspiracy claim are dismissed. The motion is denied as to DeJesus's false arrest claim. DeJesus has withdrawn his municipal liability claim.

Defendants shall file their answer(s) to the complaint on or before November 18, 2014.

The Clerk of the Court is directed to close the motion at docket number 13.

SO ORDERED.

Dated: October 27, 2014
       New York, New York

_____
J. PAUL OETKEN
United States District Judge